# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| FREEMAN RAY HARRISON ) <br> #477504, ) <br> ) <br>     Petitioner, ) <br> ) <br> v. ) <br> ) <br> MICHAEL PARRIS, ) <br> ) <br>     Respondent. ) | NO. 3:16-cv-00565 <br> JUDGE CRENSHAW |

## MEMORANDUM

Petitioner Freeman Ray Harrison, a state prisoner serving an effective sentence of 20 years for two counts of aggravated sexual battery and one count of reckless endangerment, has filed a *pro se* petition under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. No. 1), along with a memorandum in support. (Doc. No. 2.) Respondent has filed an answer and relevant portions of the state court record. (Doc. Nos. 14, 19, 23.) Petitioner has filed a reply (Doc. No. 28), and this matter is fully briefed and ripe for review. For the reasons set forth below, the Petition will be denied.

## I.   BACKGROUND AND PROCEDURAL HISTORY

A Rutherford County jury convicted Petitioner on September 17, 2010, of two counts of aggravated sexual battery and one count of reckless endangerment. (Doc. No. 14-1, at 1.) On December 17, 2010, the trial court sentenced Petitioner to 10 years on each count of aggravated sexual battery, and 11 months 29 days for reckless endangerment. (Doc. No. 14-1, at 48–49, 52.) The aggravated sexual battery sentences were ordered to be served consecutively, and the reckless endangerment was ordered to run concurrently, giving Petitioner a total effective sentence of 20 years. (Doc. No. 14-1, at 48–49, 52.) The Criminal Appeals Court affirmed the convictions and

sentences on September 27, 2013. (Doc. No. 14-17); State v. Harrison, No. M2011-01803-CCA-R3-CD, 2013 WL 5436711 (Tenn. Ct. Crim. App. May 14, 2013), appeal denied (Tenn. Feb. 12, 2014). The Tennessee Supreme Court denied Petitioner's application to appeal on February 12, 2014. Id.

On December 1, 2014, Petitioner filed a *pro se* petition for post-conviction relief. (Doc. No. 14-20, at 1.) Counsel was appointed (Doc. No. 14-20, at 35), but did not file an amended petition. The trial court held a hearing on February 9, 2015, and denied relief on February 10, 2015. (Doc. No. 14-20, at 42.) The Criminal Appeals Court affirmed on January 12, 2016. (Doc. No. 14-26); Harrison v. State, No. M2015-00454-CCA-R3-PC, 2015 WL 4737430 (Tenn. Ct. Crim. App. Aug. 11, 2015). Petitioner did not seek discretionary review in the Tennessee Supreme Court.

Petitioner filed his *pro se* Petition under 28 U.S.C. § 2254 in this Court on March 14, 2016, and Respondent acknowledges that it is timely. (Doc. No. 23, at 2.)

## II. STATEMENT OF FACTS

The Criminal Appeals Court on post-conviction appeal summarized the relevant evidence in this the case as follows:

> S.L. testified that, at the time of trial, she was seven years old.... S.L. testified that she had a grandmother she called "[N]ana" and a grandfather she called "[P]eepaw." She identified the [Petitioner] as "Peepaw."
>
> S.L. recalled a time when she and her baby sister were in the [Petitioner]'s car with him. She said she was sitting in the back of his car on her "very old car seat" and that the [Petitioner] was driving. As they were driving, the [Petitioner] told her that she could come to the front of the car. At one of the red lights, S.L. moved to the front seat of the car and sat next to the [Petitioner]. She said she was no longer, at this point, in a car seat.
>
> S.L. testified that, during the drive, the [Petitioner] took his penis out of the hole in his pants. She said he "shaked it" and then "squeezed it" and then "white stuff came out." She said the "white stuff" looked like "pee." S.L. said that "[w]hen he let [the white stuff] go, it like just sucked in there." S.L. said, later, the [Petitioner] "shaked

it again and then squeezed it, and then more white stuff came out.["] And he touched it and tasted it and told her it was sweet. She tasted it, and the [Petitioner] asked her if it was "sour or sweet," and she described the taste as "[s]our."

S.L. testified that, during the ride, the [Petitioner] also asked her if she had to go "pee." She told him that she did not, and he said he was going to "check it." He stuck two fingers into her shorts and touched the inside of her vagina. S.L. said it felt "[t]icklish."

S.L. said that the [Petitioner] told her he did not want her to tell anyone about what had happened, but she could not recall exactly what he said. She also recalled that, while they were still in the car together, he told her he would get into trouble if she told anyone.

Harrison v. State, No. M201500454CCAR3PC, 2016 WL 153028, at *1–2 (Tenn. Ct. Crim. App. Jan. 12, 2016) (quoting State v. Harrison, No. M2011-01803-CCA-R3-CD, 2013 WL 5436711, at *1–2 (Tenn. Ct. Crim. App. Sept. 27, 2013).

### III. ISSUES PRESENTED FOR REVIEW

Petitioner asserts the following claims for relief:

1. There is insufficient evidence to support his conviction for aggravated sexual battery in Count 2.

2. Trial counsel was ineffective for failing to object to the trial court's instruction to the jury that it could convict Petitioner of aggravated sexual battery as a lesser-included offense of rape of a child as charged in Count 1.

3. Appellate counsel was ineffective for failing to appeal on the basis of the improper instruction to the jury to consider aggravated sexual battery as a lesser-included offense of rape of a child.

### IV. STANDARD OF REVIEW

#### A. AEDPA Review on the Merits

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S .C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a

3

federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Peterson v. Warren, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" Woodford v. Garceau, 538 U.S. 202, 206 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." Uttecht v. Brown, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102–03 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (d)(2). A state court's legal decision is "contrary to" clearly established federal law under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. at 412–13. An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A state court decision is not unreasonable under this standard simply because the federal court finds it erroneous or incorrect. Id. at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. Id. at 410–12.

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under § 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings.'" Young v. Hofbauer, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." Matthews v. Ishee, 486 F.3d 883, 889 (6th Cir. 2007) (quoting § 2254(d)(2) and (e)(1)); but see McMullan v. Booker, 761 F.3d 662, 670 and n.3 (6th Cir. 2014) (observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read Matthews to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under § 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." Rice v. White, 660 F.3d 242, 250 (6th Cir. 2011).

Thus the standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the

merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (quoting Harrington, 562 U.S. at 102, and Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). The petitioner carries the burden of proof. Pinholster, 563 U.S. at 181.

### B. Exhaustion and Procedural Default

#### 1. *Exhaustion*

28 U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has presented the same claim to the state courts. Pinholster, 563 U.S. at 182. This rule has been interpreted by the Supreme Court as one of total exhaustion. Rose v. Lundy, 455 U.S. 509 (1982). Thus, each and every claim set forth in a federal habeas corpus petition must have been presented to the state appellate court. Picard v. Connor, 404 U.S. 270 (1971); see also Pillette v. Foltz, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). Moreover, the substance of the claim must have been presented to the state courts as a federal constitutional claim, Gray v. Netherland, 518 U.S. 152, 162–63 (1996); Koontz v. Glossa, 731 F.2d 365, 369 (6th Cir. 1984), and under the same legal theory in which it is later presented in federal court. Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998). Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim. Wagner v. Smith, 581 F.3d 410, 414 (6th Cir. 2009).

#### 2. *Procedural Default*

The procedural default doctrine is ancillary to the exhaustion requirement. See Edwards v. Carpenter, 529 U.S. 446 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate

6

state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. Wainwright v. Sykes, 433 U.S. 72, 81–82 (1977); see also Walker v. Martin, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment"); Coleman v. Thompson, 501 U.S. 722 (1991) (same).[1] If a claim has never been presented to the state courts, but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim), then the claim is technically exhausted, but procedurally barred. Coleman, 501 U.S. at 731–32; see also Hicks v. Straub, 377 F.3d 538, 551 (6th Cir. 2004) (the procedural default doctrine prevents circumvention of the exhaustion doctrine).

If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." Coleman, 501 U.S. at 750. The burden of showing cause and prejudice to excuse defaulted claims is on the habeas petitioner. Lucas v. O'Dea, 179 F.3d 412, 418 (6th Cir. 1999) (citing Coleman, 501 U.S. at 754).

"'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him [;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." Coleman, 501 U.S. at 753

---

[1] "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Walker, 562 U.S. at 315. A state rule is an "adequate" procedural ground if it is "firmly established and regularly followed." Id. (quoting Beard v. Kindler, 558 U.S. 53, 60–61 (2009)). "A discretionary state procedural rule ... can serve as an adequate ground to bar federal habeas review ... even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." Id. at 1128 (quoting Kindler, 558 U.S. at 60–61) (internal citations & quotation marks omitted).

7

(emphasis in original). Examples of cause include the unavailability of the factual or legal basis for a claim or interference by officials that makes compliance "impracticable." Id.

To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his actual and substantial disadvantage." Perkins v. LeCureux, 58 F.3d 214, 219 (6th Cir. 1995) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)); see also Ambrose v. Booker, 684 F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default").

"When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." Simpson v. Jones, 238 F.3d 399, 409 (6th Cir. 2000). Likewise, if a petitioner cannot establish prejudice, the question of cause is immaterial. See United States v. Frady, 456 U.S. 152, 168 (1982) ("In applying this dual [cause and actual prejudice] standard to the case before us, we find it unnecessary to determine whether Frady has shown cause, because we are confident he suffered no actual prejudice . . ..").

## V. ANALYSIS AND DISCUSSION

### A. Claim 1

Petitioner alleges that there was insufficient evidence to support his conviction on Count 2 for aggravated sexual battery, and that the state court's adverse ruling on this claim constitutes an unreasonable application of Jackson v. Virginia, 443 U.S. 307 (1979). (Doc. No. 1, at 5; Doc. No. 2, at 7–14.)

The Criminal Appeals Court rejected Petitioner's insufficient-evidence claim on direct appeal as follows:

> The Defendant contends that the evidence is insufficient to sustain his conviction for reckless endangerment and for the count of aggravated sexual battery that relied upon his ejaculation and the victim's tasting of his semen. . . ..
>
> The Defendant further contends that the act relied upon by the State to support his conviction for aggravated sexual battery in Count 2, namely that he ejaculated and

that the victim tasted that ejaculation, does not meet the definition of aggravated sexual battery. The Defendant further notes that the Legislature has recently amended Tennessee Code Annotated section 39–13–109 to include the type of behavior charged in the indictment, making it an offense for a person, who knows they are infected with HIV, HBV, or HCV, to subject another person to their bodily fluid in any manner that presents a significant risk of transmission of the disease. FN3 This, he asserts, further indicates that the Defendant's exposure of S.L. to his bodily fluid, without otherwise meeting the elements of aggravated sexual battery, requires reversal of his conviction.

> FN3: HIV is the acronym for human immunodeficiency virus; HBV similarly stands for hepatitis B virus, and HCV stands for hepatitis C virus.

The State counters that the evidence is sufficient to sustain the Defendant's conviction for reckless endangerment based upon Harrison's testimony that the Defendant had an active genital herpes infection and her testimony about how genital herpes is transmitted. The State cites several cases finding that transmission of herpes to a victim of sexual assault constituted a permanent or life-threatening injury. The State asserts that the Defendant has waived his challenge to his aggravated sexual battery conviction by failing to ensure that all the evidence relevant to the issue was memorialized in the appellate record. The State notes that the prosecutor asked the victim, "Okay. Hold up your hand. Let me see what he did with it." Neither the Defendant nor the prosecutor articulated in the record the victim's response. Therefore, the State asserts, this issue is waived.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Tenn. R. App. P. 13(e); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392–93 (Tenn. Ct. Crim. App. 1999). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Ct. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997); see also Liakas, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. Goodwin, 143 S.W.3d at 775 (citing State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Carruthers, 35 S.W.3d 516, 557–58 (Tenn. 2000).

. . .

Aggravated sexual battery is defined as "unlawful sexual contact with a victim by the defendant or the defendant by a victim" and the victim is younger than thirteen years old. T.C.A. § 39–13–504. "'Sexual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification. See T.C.A. § 39–13–501(6) (2010). A person's intimate parts are defined as including "the primary genital area, groin, inner thigh, buttock or breast of a human being." T.C.A. § 39–13–501(2).

As stated by this Court recently in State v. Mahlon Johnson, No. W2011–01786–CCA–R3–CD, 2013 WL 501779, at * 12 (Tenn. Crim. App., at Jackson, Feb. 7, 2013), no Tenn. R. App. P. 11 application filed:

> This Court has previously examined the statute defining "sexual contact" and concluded "there is no requirement that the sexual contact itself be for sexual arousal or gratification." State v. Roy Chisenhall, No. M20003–009560–CCA–R3–CD, 2004 WL 12177118, at *3 (Tenn. Crim. App., at Nashville, June 3, 2004), no Tenn. R. App. P. 11 application filed. The Court went on to state that the statute also does not require that the appellant become sexually aroused or gratified by the sexual contact. The statute merely requires touching that can be "reasonably construed as being for the purpose of sexual arousal or gratification." Id. (citing T.C.A. § 39–13–501(6) (2010)); State v. Steven Webster, No. W1999–00293–CCA–R3–CD, 1999 WL 1097820, at *1–2 (Tenn. Crim. App., at Jackson, Nov. 22, 1999), perm. to app. denied (Tenn. 2000).

The Defendant contends that his having S.L. taste his semen does not meet the definition of aggravated sexual battery. The State counters that the Defendant has waived this issue because the prosecutor asked the victim to demonstrate what the Defendant did with her hand, and the victim did so, but was silent during this demonstration. The State asserts that, because the Defendant did not memorialize for the record the manner in which S.L. said the Defendant moved the victim's hand, he has waived this issue.

The victim in this case was under thirteen years of age. The issue, therefore, if not waived as the State claims, hinges upon whether the Defendant's action of having the victim taste his semen in the unique manner that transpired in this case is "sexual contact" as defined by the aggravated sexual battery statute. We conclude that the Defendant's actions of having the victim taste his semen meets the definition of "sexual contact" so as to support his conviction for aggravated sexual battery. The victim testified that the Defendant took his penis out of the hole of his pants and "shaked it" and "squeezed it" and that "white stuff" came out. He then encouraged her to place her hand in the semen and taste it. The jury could have reasonably concluded that the Defendant's ejaculate remained on his intimate parts or on the clothing covering the immediate area of his intimate parts, as required by the statutory definition of sexual contact. See T.C.A. § 39–13–501(6). The jury further properly concluded that the victim came into contact with the Defendant's intimate parts or the clothing covering the immediate area of his intimate parts when she reached and touched his ejaculate to put it on her fingers, which she then put into her mouth. Finally, the jury properly concluded that the Defendant's actions could "reasonably construed as being for the purpose of sexual arousal or gratification." As such, the evidence supports the Defendant's conviction.

The Defendant further notes that the Legislature has recently amended Tennessee Code Annotated section 39–13–109 to include the type of behavior charged in the indictment, making it an offense for a person, who knows they are infected with HIV, HBV, or HCV, to subject another person to their bodily fluid in any manner that presents a significant risk of transmission of the disease. This, he asserts, further indicates that the Defendant's exposure of S.L. to his bodily fluid, without otherwise meeting the elements of aggravated sexual battery, requires reversal of his conviction. We find this argument by the Defendant unpersuasive. The Defendant's conduct included more than exposing S.L. to his bodily fluid. The Defendant had S.L. taste his semen, which the jury could have reasonably concluded remained on his intimate parts or on the clothing covering his intimate parts. The Defendant is not entitled to relief on this issue.

State v. Harrison, No. M2011-01803-CCA-R3CD, 2013 WL 5436711, at *17–18, 20–21 (Tenn. Ct. Crim. App. Sept. 27, 2013).

The right to due process guaranteed by the Constitution ensures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. The evidence is sufficient

if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The state court accurately identified this standard, and analyzed the evidence presented at trial in light of it. In reviewing such an analysis by a state court in a federal habeas action, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Cavazos v. Smith, 132 S. Ct. 2, 4 (2011).

Petitioner focuses his habeas claim on whether the evidence proves that the victim touched his intimate parts or their immediate area or clothing covering them, as required to establish the "sexual contact" element of this offense. (Doc. No. 1, at 5.) Specifically, he asserts that there is no proof that the victim had such sexual contact in the course of tasting his semen, and that she may instead have "simply licked it from his finger just as he did." (Id.) According to Petitioner, the only possible conclusion from the evidence is "that the Petitioner 'touched the semen' with his own finger or hand and the victim tasted that semen from the Petitioner's finger or hand." (Doc. No. 2, at 15.) The victim, who was 7 years old when she testified at trial, did not verbalize how she came to taste Petitioner's semen. The transcript reflects that she demonstrated some physical action:

> Q: Can you stand up and show me what he did? Can you stand up there? Okay. Hold your hand up. Let me see what he did with it.
> A: He shaked it again and then squeezed it, and then more white stuff came out. And he touched it and let me taste it.

(Doc. No. 14-3, at 28–29.)

The grandmother, to whom the victim first reported the incident, did not mention the tasting in her testimony, but demonstrated the victim's gesture:

12

> A: . . . I asked her what happened next. And she did like this. She took her shirt, and she went like this, and she said –
>
> Q: I can't see what you are doing.
>
> A: She took her shirt. And she like motioned to pull it back down over her pants.
>
> Q: You can stand up, if you want, to demonstrate?
>
> A: Like this. She said peepaw pulled his shirt back down like this. And that was the end of our conversation. I didn't ask her anything else.

(Doc. No. 14-4, at 66.)

Neither witness's demonstration is described or otherwise preserved in the record. Taken alone, this testimony is ambiguous at best about how Petitioner's semen reached the victim's mouth, and does leave open the possibility that the victim tasted the semen from Petitioner's finger or hand, with which Petitioner himself had "touched it." However, the manner in which the parties' counsel argued the evidence at trial provides insight into the perspective of those who witnessed the physical demonstrations at trial. In closing argument, the prosecutor argued that the evidence showed that the victim "got some *on her finger* and tasted it," and later that "Peepaw *had her* put his semen in her mouth." (Doc. No. 14-8, at 9 and 24) (emphasis added). Petitioner's counsel did not object to this characterization of the evidence as unfounded or improper, nor did he directly dispute it in his own argument, apart from challenging the credibility of the entire account. (E.g., Doc. No. 14-8, at 49.) Moreover, in his sufficiency of the evidence claim on direct appeal, Petitioner's point of contention was not whether the victim had touched his semen, which he seemed to concede for the purpose of his argument, but the location of his semen when she did so:

> The victim merely touching or tasting semen is not sufficient evidence for an aggravated sexual battery conviction as that is defined in Tenn. Code Ann. §§ 39-13-501 and 39-13-504. The state would have presented sufficient evidence if there was testimony from the victim or another witness that the victim touched the

> Appellant's intimate parts or the clothing covering those parts. . . .. It could have been anywhere including not even on the appellant's body at all.[2]

(Doc. No. 14-14, at 22.) These arguments are not evidence, but they confirm that the ambiguity in the transcript leaves room for at least the possibility that the jury witnessed one or more demonstrations from which they could have found that the victim touched Petitioner's semen with her own hand.

In light of the "double layer of deference" this Court must extend on this claim, first to the jury's finding of guilt and then to the state appellate court's finding of sufficient evidence, White v. Steele, 602 F.3d 707, 710 (6th Cir. 2009), Petitioner has not established that he is entitled to relief. Regardless of whether the Court would have found Petitioner guilty at trial, or whether it would have found in the first instance whether there was sufficient evidence to support the jury's finding, the Court cannot find the state appellate court's decision unreasonable where the record is ambiguous enough to support either conclusion:

> Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable.

Id. (quoting Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009)). Because the state court's disposition of this claim was not unreasonable, the claim will be denied on its merits.

### B. Claim 2

Petitioner was charged in Count 1 of the indictment with the crime of rape of a child. (Doc. No. 14-7, at 25–26.) At the conclusion of the trial, the court instructed the jury that if it acquitted

---

[2] To the extent that Petitioner's habeas petition could be construed to reassert this theory, the state court's determination that the jury was entitled to infer that Petitioner's ejaculate was in the immediate area of his genitals or the clothing covering them was not unreasonable. "Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial." Coleman v. Johnson, 132 S. Ct. 2060, 2064, 182 L. Ed. 2d 978 (2012).

Petitioner of rape of a child, it should consider aggravated sexual battery as a lesser-included offense of that crime. (Id. at 25–26, 31–33.) The jury convicted Petitioner of aggravated sexual battery on Count 1. (Doc. No. 14-8, at 85.) Petitioner now claims that aggravated sexual battery is ***not*** a lesser-included offense of the crime of rape of a child, and that trial counsel was therefore ineffective for failing to object to the trial court's instruction to the jury. (Doc. No. 1, at 7.) He acknowledges, however, that this claim was never raised in state court and is procedurally defaulted. (Id.)

In an effort to overcome the default of his claim, Petitioner alleges that his post-conviction counsel was ineffective for failing to raise this claim, and invokes Martinez v. Ryan, 132 S. Ct. 1309, 1320 (2012). (Doc. No. 1, at 5–6.) Before Martinez was decided, a prisoner could not demonstrate cause to excuse default by claiming that he received ineffective assistance of counsel during state post-conviction proceedings. See Coleman, 501 U.S. at 752-53. In Martinez, the Supreme Court announced that the ineffective assistance of post-conviction counsel can, under limited circumstances and in states with procedural impediments to raising ineffective-assistance claims on direct appeal, establish cause for the default of a claim of ineffective assistance of trial counsel. Martinez, 132 S. Ct. at 1320; see also Sutton v. Carpenter, 745 F.3d 787 (6th Cir. 2014) (holding that Martinez applies in Tennessee). To overcome default under Martinez, a petitioner must show that post-conviction counsel was ineffective during the "initial-review collateral proceeding," Martinez, 132 S. Ct. at 1320, and that the underlying claim is a "substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. at 1318-19.

The Sixth Circuit has provided the following framework to evaluate claims under Martinez:

> As to these claims, the district court should determine . . . : (1) whether state post-conviction counsel was ineffective, . . . and (2) whether [Petitioner's] claims of ineffective assistance of counsel were "substantial" within the meaning of Martinez, Sutton, and Trevino. Questions (1) and (2) determine whether there is

15

cause. The next question is (3) whether [Petitioner] can demonstrate prejudice. Finally, the last step is: (4) if the district court concludes that [Petitioner] establishes cause and prejudice as to any of his claims, the district court should evaluate such claims on the merits. . . . [E]ven "[a] finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." Martinez, 132 S. Ct. at 1320.

Atkins v. Holloway, 792 F.3d 654, 660 (6th Cir. 2015) (some internal citations omitted).

Whether post-conviction counsel was constitutionally ineffective is necessarily connected to the strength of the claim he failed to raise, so "in many habeas cases seeking to overcome procedural default under Martinez, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was 'substantial' enough to satisfy the 'actual prejudice' prong of Coleman." Thorne v. Hollway, No. 3:14-CV-0695, 2014 WL 4411680, at *23 (M.D. Tenn. Sept. 8, 2014), aff'd sub nom. Thorne v. Lester, 641 F. App'x 541 (6th Cir. 2016). Accordingly, the Court considers whether Petitioner's ineffective-assistance claim has any merit.

All federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of Strickland v. Washington, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. Id. at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" Id. at 688, 689. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding

16

fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). Prejudice, under Strickland, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Before 2009, it was clearly established in Tennessee that aggravated sexual battery was a lesser-included offense of the crime of rape of a child. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003) ("In [State v. Elkins, 83 S.W.3d 706, 713 (Tenn. 2002)], this Court recognized that aggravated sexual battery is a lesser-included offense of rape of a child ...."). In 2009, the Tennessee legislature amended its statute concerning lesser-included offenses, Tennessee Code Annotated § 40-18-110, in a way that led several Criminal Appeals Court panels to conclude that it had abrogated the legal test under which aggravated sexual battery had previously been found to be a lesser-included offense of child rape. See, e.g., State v. Ortega, No. M2014–01042–CCA–R3–CD, 2015 WL 1870095, at *10 (Tenn. Crim. App. Apr. 23, 2015), no perm. app. filed; State v. Stewart, No. M2011–01994–CCA-R3–CD, 2013 WL 3820992, at *37 (Tenn. Crim. App. Jul. 22, 2013), no perm. app. filed. Petitioner claims that this statutory change and Ortega establish that it was error for the trial court to instruct his jury that it could find him guilty of aggravated sexual battery on Count 1, and that his trial counsel was accordingly ineffective for failing to object to that instruction.

As Respondent points out, however, the first appellate court decision holding that the 2009 amendment removed aggravated sexual battery from the possible lesser-included offenses for child rape was not issued until years after Petitioner's trial. (Doc. No. 23, at 32 (observing that the July 22, 2013 decision in Stewart was the first such opinion).) Moreover, the Tennessee Supreme Court

17

has recently rejected Petitioner's theory and held that aggravated sexual battery continues to be a lesser-included offense of rape of a child even after the 2009 amendment. State v. Howard, -- S.W.3d --, No. E201401510SCR11CD, 2016 WL 5933430, at *9–10 (Tenn. Oct. 12, 2016) (reinstating defendant's aggravated sexual battery conviction, which the Criminal Appeals Court had vacated based on its erroneous application of the amendment).

Trial counsel's failure to raise an objection that was unsupported by any case law at the time of trial and has since been repudiated by the state's highest court did not constitute deficient performance. See Gratton v. McQuiggin, No. 2:09-CV-14782, 2013 WL 388591, at *7 (E.D. Mich. Jan. 31, 2013) ("counsel cannot be found ineffective for failing to raise meritless issues"). Accordingly, Petitioner's underlying ineffective-assistance claim is not "substantial" for the purpose of Martinez, and he has failed to overcome its default.

### C.    Claim 3

Finally, Petitioner claims that his counsel on direct appeal was ineffective for failing to assert that the trial court's instruction on aggravated sexual battery as a lesser-included offense constituted plain error. (Doc. No. 1, at 8.) As with Claim 2, however, Petitioner acknowledges that this claim is procedurally defaulted, and argues that post-conviction counsel's ineffective failure to raise it provides cause to overcome default under Martinez. (Doc. No. 1, at 9; Doc. No. 2, at 26–29.)

Petitioner's argument fails. The law in this circuit is perfectly clear that the Martinez exception is strictly limited to claims of ineffective assistance of ***trial counsel***:

> We will assume that the Supreme Court meant exactly what it wrote: "Coleman held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true *except* as to initial-review collateral proceedings for claims of ineffective assistance of counsel *at trial*." [Martinez, 132 S. Ct.] at 1316.
> . . ..
> . . .. Under Martinez's unambiguous holding our previous understanding

of Coleman in this regard is still the law—ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel.

Hodges v. Colson, 727 F.3d 517, 531 (6th Cir. 2013), cert. denied sub nom. Hodges v. Carpenter, 135 S. Ct. 1545 (2015), reh'g denied, 135 S. Ct. 2345 (2015) (emphasis in Hodges). Accordingly, Petitioner is unable to overcome the default of this claim.

Alternatively, even if Martinez applied to this claim, it would fail on the "substantial" prong for the same reasons set forth above under Claim 2.

## VII. CONCLUSION

For the reasons set forth above, Petitioner's Claim 1 fails on its merits, and Claims 2 and 3 are procedurally defaulted and alternatively fail on their merits under AEDPA. Accordingly, the Court will deny the requested relief and dismiss the petition.

An appropriate Order shall enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE